UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARILYN COLLINS, JENNY HEINZ,
ELIZABETH LAPENNE, EMILOU MACLEAN,
ANN SHIRAZI, ASYA WEISENHAUS, and CHLOE
WEISENHAUS,

> Plaintiffs,

-v-

THE CITY OF NEW YORK, NEW YORK CITY
POLICE DEPARTMENT ("NYPD") DEPUTY
CHIEF STEVEN ANGER, NYPD LIEUTENANT
MICHAEL ZIELINSKI, NYPD LIEUTENANT
WILLIAM COOKE, NYPD OFFICER
THAMESHWAR SHARMA, SHIELD NO. 22759,
NYPD OFFICER FRANCISCO DELGADO,
SHIELD NO. 20240, NYPD OFFICER JAMES
LOUIE, SHIELD NO. 13986, NYPD OFFICER
CHEUNG LI, SHIELD NO. 05474, NYPD OFFICER
NIKIM WALKER, SHIELD NO. 02320, and NYPD
OFFICER JOHN MCNAMARA, SHIELD NO.
22960,

> Defendants.

---

**COMPLAINT AND DEMAND
FOR JURY TRIAL**

Index No.

 



RECEIVED
NOV 05 2014
U.S.D.C. S.D. N.Y.

2014 NOV -6 PH 3: 55
CITY OF N.Y. LAW DEPT.
OFFICE OF CORP. COUNSEL
COMMUNICATIONS UNIT

Plaintiffs, by their counsel, GIDEON ORION OLIVER, as and for their Complaint against Defendants, hereby allege as follows:

## PRELIMINARY STATEMENT

1.    Plaintiffs bring this action for compensatory damages, punitive damages and attorney's fees pursuant to 42 U.S.C. §1983 and 42 U.S.C. § 1988 for violations of their civil rights, as secured by said statutes and the Constitution of the United States and the Constitution and laws of the State of New York.

2.    On November 5, 2011, in a "desolate part of Foley Square on a Saturday afternoon," New York City Police Department ("NYPD") officers unreasonably and unlawfully

shut down the public sidewalk area near the courthouse at 60 Centre Street to peaceful protest

activity.  *See* Baker, Al. "Police Force Wall Street Protesters Off Sidewalks," *The New York*

*Times*, 11/5/11, *see* http://cityroom.blogs.nytimes.com/2011/11/05/police-force-wall-street-

protesters-off-sidewalks/.

        3.      According to *The New York Times:*

> …the police kept yelling orders that the sidewalk was closed, or temporarily
> closed, or had to be closed to keep order. They fanned out in a line, stretching
> orange mesh netting across the breadth of the sidewalk, and walked along,
> pushing protesters back and sweeping them away.
>
> The strategy drew expressions of puzzlement from many in the area.
>
> "The police warned these people to move because of pedestrian traffic, but this is
> an empty place," said Robert Rosen, 66. "Who are they talking about?"

*Id.*

        4.      On November 5, 2011, Plaintiffs participated in peaceful activities protected by

the First Amendment associated with an Occupy Wall Street ("OWS") event near the New York

State Supreme Court courthouse located at 60 Centre Street. In the vicinity of 60 Centre Street,

without lawful authority or justification, and acting pursuant to a policy, practice, and/or custom

of unlawfully limiting First Amendment assemblies and other lawful and constitutionally

protected activities believed by the NYPD to be associated with OWS, Defendants unlawfully

arrested Plaintiffs.

        5.      After several hours each in police custody, Plaintiffs were eventually charged

with violations and released on their own recognizance.

        6.      One Plaintiff was released with a Desk Appearance Ticket ("DAT") but never

charged with any offense.

        7.      The other Plaintiffs each returned to court between approximately five and as

many as nine times before their cases were eventually dismissed. The last Plaintiffs' cases were dismissed on February 1, 2013.

## JURISDICTION AND VENUE

8.      This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988, and the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

9.      This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3-4).

10.      Venue is proper pursuant to 28 U.S.C. §1391(b) in that Plaintiffs' claims arose in the Southern District of New York.

## PARTIES

11.      Plaintiff MARILYN COLLINS is a Caucasian female, and at all times relevant to this action was a resident of New York State.

12.      Plaintiff JENNY HEINZ is a Caucasian female, and at all times relevant to this action was a resident of New York State.

13.      Plaintiff ELIZABETH LAPENNE is a Caucasian female, and at all times relevant to this action was a resident of New York State.

14.      Plaintiff EMILOU MACLEAN is a Caucasian female, and at all times relevant to this action was a resident of New York State.

15.      Plaintiff ANN SHIRAZI is a Caucasian female, and at all times relevant to this action was a resident of New York State.

16.      Plaintiff ASYA WEISENHAUS is a Caucasian female, and at all times relevant to this action was a resident of New York State.

17.     Plaintiff CHLOE WEISENHAUS is a Caucasian female, and at all times relevant to this action was a resident of New York State.

18.     Defendant THE CITY OF NEW YORK ("NYC" or "the City") is a municipal entity created and authorized under the laws of the State of New York, with general offices located at City Hall, New York, New York 10007.

19.     Defendant City is authorized by law to maintain the New York City Police Department ("NYPD"), which acts as its agent in the area of law enforcement, and Defendant NYC is ultimately responsible for the NYPD and assumes the risks incidental to the maintenance of it and its employees.

20.     At all times relevant herein, Defendant STEVEN ANGER was a NYPD Deputy Chief, and Defendants MICHAEL ZIELINSKI and WILLIAM COOKE were NYPD Lieutenants, and these Defendants were each and all supervisors and high-level NYPD policymaking officials personally involved in depriving Plaintiffs of their rights and/or in developing and/or implementing the unconstitutional policies, practices, customs and/or conduct complained of herein. Defendants ANGER, ZIELINSKI, and COOKE were personally involved in designing and implementing the policies and practices complained of herein, and were personally involved in directing, supervising, and/or assisting in Plaintiffs' arrests and/or arrest processing and/or failed to intervene to prevent injuries to Plaintiffs.

21.     Defendants NYPD OFFICER THAMESHWAR SHARMA, SHIELD NO. 22759, NYPD OFFICER FRANCISCO DELGADO, SHIELD NO. 20240, NYPD OFFICER JAMES LOUIE, SHIELD NO. 13986, NYPD OFFICER CHEUNG LI, SHIELD NO. 05474, NYPD OFFICER NIKIM WALKER, SHIELD NO. 02320, and NYPD OFFICER JOHN MCNAMARA, SHIELD NO. 22960, were at all times herein officers, employees, and agents of

4

the NYPD and who were personally involved in depriving Plaintiffs of their rights and in implementing the unconstitutional policies, practices, customs and/or conduct complained of herein, as set forth more fully below. They are each being sued herein in their individual and official capacities.

22.     At all times hereinafter mentioned the Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

23.     Each and all of the acts of the Defendants alleged herein were done by said Defendants while acting within the scope of their employment by the Defendant City.

24.     Each and all of the acts of the Defendants alleged herein were done by said Defendants while acting in furtherance of their employment by the Defendant City.

25.     Defendants were each and all responsible, in whole and/or in part, for the planning for and/or creation, promulgation, implementation, and/or enforcement of the unconstitutional policies, practices and/or customs complained of herein, and/or condoned, acquiesced in, adopted, and/or approved of the same, through their acts and/or failures to act, as set forth more fully below.

26.     At all times relevant herein, as set forth more fully below, Defendants' actions and/or failures to act were malicious, intentional, knowing, and/or with a deliberate indifference to or a reckless regard for the natural and probable consequences of their acts and/or omissions.

27.     Each individual Defendant is sued in her or his individual and official capacities.

## **STATEMENT OF FACTS**

28.     On the afternoon of November 5, 2011, each Plaintiff was lawfully present in the vicinity of 60 Centre Street, participating in or observing First Amendment activities associated with OWS.

29.     On the afternoon of November 5, 2011, Defendant Anger was the highest ranking NYPD officer on the scene in the vicinity of 60 Centre Street.

30.     As such, Defendant Anger was the "Incident Commander" and was actually responsible for making command and control decisions as well as all supervisory decisions with respect to all fellow officers on the scene.

31.     On the afternoon of November 5, 2011, Defendants Zielinski and Cooke were Lieutenants under Defendant Anger in the chain of command.

32.     On the afternoon of November 5, 2011, Defendant Anger actually directed and/or supervised Defendant Zielinski's activities with respect to giving dispersal orders and/or directing, supervising, or assisting in arrests or arrest processing.

33.     . On the afternoon of November 5, 2011, Defendant Anger actually directed and/or supervised Defendant Cooke's activities with respect to giving dispersal orders and/or directing, supervising, or assisting in arrests or arrest processing.

34.     On the afternoon of November 5, 2011, Defendants Sharma, Delgado, Louie, Li, Walker, and McNamara were all NYPD officers under the other Defendants in the chain of command, and Defendant Anger, Lt. Zeilski, and Lt. Cooke all actually directed and/or supervised their activities with respect to crowd control, arrests, and arrest processing.

35.     At some time before 3:30PM, Defendant Anger directed Defendant Zielinski to give dispersal orders to protesters in the vicinity of the courthouse steps at 60 Centre Street and to make arrests.

36.     At some time before 3:30PM, Defendant Anger directed Defendant Cooke to give dispersal orders to protesters in the vicinity of the courthouse steps at 60 Centre Street and to make arrests.

37.     When Defendant Anger gave those directions, Defendant Anger did not have probable cause to believe that any Plaintiff had committed Disorderly Conduct or committed any other offense.

38.     Under Defendant Anger's direct supervision, Defendant Zielinski and/or Defendant Cooke gave some conflicting directions to some perceived protesters, none of which directions were lawful orders to disperse.

39.     At all times relevant herein prior to each Plaintiff's detention and arrest, each Plaintiff complied with or attempted to comply with all police directions that Plaintiff heard.

40.     Without giving clearly audible, lawful orders to disperse and a meaningful opportunity to comply, Defendants Anger, Zielinski, and/or Cooke ordered and/or supervised the detentions and arrests of each of the Plaintiffs by Defendant NYPD Officers Sharma, Delgado, Louie, Li, Walker, and McNamara.

41.     Plaintiffs were each detained and arrested by NYPD officers, including the Defendants.

42.     Defendant NYPD agents then caused each Plaintiff to be transported to One Police Plaza for mass arrest processing.

43.     As a result of this incident, Plaintiffs suffered physical, psychological and emotional injuries, mental anguish, suffering, humiliation, embarrassment, and other damages.

**PLAINTIFF MARILYN COLLINS**

44.     Ms. Collins was released after approximately four hours with a DAT.

45.     On December 20, 2011, at around 10:04AM, Defendant Sharma swore out a criminal court accusatory instrument alleging that on November 5, 2011 at about 15:20 hours in front of 60 Centre Street, in the County and State of New York, he observed Ms. Collins

> … standing with a group of at least fifty individuals in front of the above location. Deponent further states that due to the presence of said group, the sidewalk was blocked, pedestrians could not walk on said sidewalk, and pedestrians were forced to walk around said group.

> Deponent further observed Lieutenant William Cooke, of the Disorder Control Unit that repeatedly, via bullhorn, instruct said group of individuals in substance to disperse and leave the area. Deponent further states that defendant did not leave the area.

46.     Based on that accusatory instrument, on or about January 10, 2012, Ms. Collins was charged with violating New York State Penal Law ("PL") §§ 240.20(5) and 240.20(6) (Disorderly Conduct).

47.     In a Decision and Order dated April 18, 2012, following motion practice, the New York City Criminal Court dismissed the PL § 240.20(5) charge as facially insufficient.

48.     Ms. Collins appeared on or about January 10, 2012; March 5, 2012; May 21, 2012; November 14, 2012; November 20, 2012; November 27, 2012; November 30, 2012; December 7, 2012; and February 1, 2013, before the case against her was dismissed on speedy trial grounds.

49.     As a result of this incident, Plaintiff suffered physical, psychological and emotional injuries, mental anguish, suffering, humiliation, embarrassment, and other damages.

**PLAINTIFF JENNIFER HEINZ**

50.     Ms. Heinz was released after approximately four hours with a DAT.

51.     On January 9, 2012, at around 11:03 AM, defendant Delgado swore out a criminal court accusatory instrument alleging that, on November 5, 2011, at about 15:30 hours on the

8

corner of Centre Street and Pearl Street, in the County and State of New York, he observed Ms.

Heinz

> … standing with a group of at least twenty-five individuals in front of the above location. Deponent further states that due to the presence of said group, the sidewalk was blocked, pedestrians could not walk on said sidewalk, and pedestrians were forced to walk into the street to get around said group.
>
> Deponent further observed Lieutenant Michael Zielinski of the Patrol Boro Manhattan South Task Force repeatedly, via bullhorn, instruct said group of individuals in substance to disperse and leave the area.
>
> Deponent further states that defendant did not leave the area.

52.     Based on that accusatory instrument, on or about January 10, 2012, Ms. Heinz

was charged with violating PL §§ 240.20(5) and 240.20(6) (Disorderly Conduct).

53.     In a Decision and Order dated April 18, 2012, following motion practice, the New

York City Criminal Court dismissed the PL § 240.20(5) charge as facially insufficient.

54.     Ms. Heinz appeared on or about January 10, 2012; March 5, 2012; May 21, 2012;

November 14, 2012; November 20, 2012; November 27, 2012; November 30, 2012; December

7, 2012; and February 1, 2013, before the case against her was dismissed on speedy trial

grounds.

55.     As a result of this incident, Plaintiff suffered physical, psychological and

emotional injuries, mental anguish, suffering, humiliation, embarrassment, and other damages.

**PLAINTIFF ELIZABETH LAPENNE**

56.     At least Defendants ANGER, ZIELINSKI, COOKE, and/or DELGADO were

personally involved in Ms. LaPenne's detention and arrest, and/or failed to intervene to prevent

or correct the violations of Ms. LaPenne's rights they were or should have been aware of in

connection with her detention and arrest.

57.     Ms. LaPenne was released after more than four hours with a DAT.

9

58.     On January 10, 2012, Ms. LaPenne appeared at 100 Centre Street pursuant to the DAT and learned that the Office of the District Attorney of New York County had declined to prosecute her.

59.     As a result of this incident, Plaintiff suffered physical, psychological and emotional injuries, mental anguish, suffering, humiliation, embarrassment, and other damages.

## PLAINTIFF EMILOU MACLEAN

60.     Ms. Maclean was acting as a volunteer Legal Observer with the National Lawyers Guild – New York City Chapter, and was wearing a bright green hat identifying her as such, at the time of her arrest on November 5, 2011.

61.     Ms. Maclean was released after approximately four hours with a DAT.

62.     On January 9, 2012, at around 11:20 AM, defendant Delgado swore out a criminal court accusatory instrument alleging that, on November 5, 2011, at about 15:30 hours on the corner of Centre Street and Pearl Street, in the County and State of New York, he observed Ms. Maclean

> … standing with a group of at least twenty-five individuals in front of the above location. Deponent further states that due to the presence of said group, the sidewalk was blocked, pedestrians could not walk on said sidewalk, and pedestrians were forced to walk into the street to get around said group.
>
> Deponent further observed Lieutenant Michael Zielinski of the Patrol Boro Manhattan South Task Force repeatedly, via bullhorn, instruct said group of individuals in substance to disperse and leave the area.
>
> Deponent further states that defendant did not leave the area.

63.     Based on that accusatory instrument, on or about January 10, 2012, Ms. Maclean was charged with violating PL §§ 240.20(5) and 240.20(6) (Disorderly Conduct).

64.     The case against Ms. Maclean was ultimately dismissed.

## PLAINTIFF ANN SHIRAZI

65.     Plaintiff was placed in plastic flexi-cuffs by a NYPD officer or officers.

66.     The plastic flexi-cuffs were too tight, and injured Plaintiff.

67.     Upon information and belief, Defendant Louie placed Ms. Shirazi in plastic flexi-cuffs and otherwise used excessive force while detaining and/or cuffing Ms. Shirazi.

68.     Alternatively, Defendant Louie knew that Ms. Shirazi was in plastic flexi-cuffs that were too tight, and failed to intervene to correct the excessive use of force.

69.     Ms. Shirazi was released after approximately three hours with a DAT.

70.     On December 9, 2011, at around 12:20PM, defendant Louie swore out a criminal court accusatory instrument alleging that, on November 5, 2011, at about 15:30 hours on the corner of Centre Street and Pearl Street, in the County and State of New York, he observed Ms. Shirazi

> … standing with a group of at least twenty-five individuals in front of the above location. Deponent further states that due to the presence of said group, the sidewalk was blocked, pedestrians could not walk on said sidewalk, and pedestrians were forced to walk into the street to get around said group.
>
> Deponent further observed Lieutenant Michael Zielinski of the Patrol Boro Manhattan South Task Force repeatedly, via bullhorn, instruct said group of individuals in substance to disperse and leave the area.
>
> Deponent further states that defendant did not leave the area.

71.     Based on that accusatory instrument, on or about January 10, 2012, Ms. Shirazi was charged with violating PL §§ 240.20(5) and 240.20(6) (Disorderly Conduct).

72.     In an Amended Decision and Order dated May 22, 2012, following motion practice, the New York City Criminal Court dismissed the PL § 240.20(5) charge as facially insufficient.

73.     Ms. Shirazi appeared on or about January 10, 2012; March 5, 2012; May 21, 2012; November 14, 2012; November 20, 2012; November 27, 2012; November 30, 2012; December 7, 2012; and February 1, 2013, before the case against her was dismissed on speedy trial grounds.

74.     As a result of this incident, Plaintiff suffered physical, psychological and emotional injuries, mental anguish, suffering, humiliation, embarrassment, and other damages.

## PLAINTIFF ASYA WEISENHAUS

75.     Plaintiff was placed in plastic flexi-cuffs by a NYPD officer or officers.

76.     The plastic flexi-cuffs were too tight, and injured Plaintiff.

77.     Upon information and belief, Defendant Li placed Ms. Weisenhaus in plastic flexi-cuffs.

78.     Alternatively, Defendant Li knew that Ms. Weisenhaus was in plastic flexi-cuffs that were too tight, and failed to intervene to correct the excessive use of force.

79.     Ms. Weisenhaus was released after approximately five hours with a DAT.

80.     On December 9, 2011, at around 12:50PM, Defendant Li swore out an accusatory instrument, alleging that, on November 5, 2011 at about 15:30 hours at Pearl Street and Centre Street opposite of Foley Square, in the County and State of New York, he observed Ms. Weisenhaus

> …standing with a group of approximately 100 individuals in front of the above location. Deponent further states that due to the presence of said group, the street was blocked, causing cars to have to go around the group of said individuals.
>
> Deponent further observed Lieutenant Michael Zielinski, of the Patrol Boro Manhattan South Task Force repeatedly, via bullhorn, instruct said group of individuals in substance to disperse and leave the area.
>
> Deponent further states that defendant did not leave the area.

12

81.     Based on that accusatory instrument, on or about January 10, 2012, Ms. Weisenhaus was charged with violating PL §§ 240.20(5) and 240.20(6) (Disorderly Conduct).

82.     At Ms. Weisenhaus's arraignment on January 10, 2012, the prosecution gave notice that Ms. Weisenhaus had allegedly stated to Defendant Li words to the effect of, "What Am I getting arrested for, what is that charge, I was leaving."

83.     Ms. Weisenhaus appeared on or about January 10, 2012; March 5, 2012; May 21, 2012; November 14, 2012; and November 20, 2012, before accepting an Adjournment in Contemplation of Dismissal ("ACD") to resolve the case.

84.     As a result of this incident, Plaintiff suffered physical, psychological and emotional injuries, mental anguish, suffering, humiliation, embarrassment, and other damages.

## PLAINTIFF CHLOE WEISENHAUS

85.     Ms. Weisenhaus was released after approximately five hours with a DAT.

86.     On January 9, 2010, at around 11:40AM, Defendant Walker swore out an accusatory instrument, alleging that, on November 5, 2011 at about 15:30 hours at Pearl Street and Centre Street opposite of Foley Square, in the County and State of New York, he observed Ms. Weisenhaus

> …standing with a group of approximately 100 to 200 individuals in front of the above location. Deponent further states that due to the presence of said group, the sidewalk was blocked, pedestrians could not walk on said sidewalk, and pedestrians were forced to walk into the street to get around said group.
>
> Deponent further observed Lieutenant Michael Zielinski, of the Patrol Boro Manhattan South Task Force repeatedly, via bullhorn, instruct said group of individuals in substance to disperse and leave the area.
>
> Deponent further states that defendant did not leave the area.

13

87.     Based on that accusatory instrument, on or about January 10, 2012, Ms. Weisenhaus was charged with violating PL §§ 240.20(5) and 240.20(6) (Disorderly Conduct).

88.     At Ms. Weisenhaus's arraignment on January 10, 2012, the prosecution gave notice that Ms. Weisenhaus had allegedly stated to Defendant Walker words to the effect of, "I didn't hear him tell the crowd to disperse."

89.     Ms. Weisenhaus appeared on or about January 10, 2012; March 5, 2012; May 21, 2012; November 14, 2012; and November 20, 2012, before accepting an ACD to resolve the case.

90.     As a result of this incident, Plaintiff suffered physical, psychological and emotional injuries, mental anguish, suffering, humiliation, embarrassment, and other damages.

## FIRST CAUSE OF ACTION

### DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. § 1983

91.     Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

92.     Defendants, under color of state law, unlawfully seized and arrested Plaintiffs.

93.     Defendants did not have probable cause to arrest Plaintiffs, nor was it objectively reasonable for Defendants to believe that they did have probable cause to arrest Plaintiffs.

94.     Defendants' decision to arrest Plaintiffs was based upon Plaintiffs' First Amendment-protected expression, and not upon Plaintiffs' violation of any provision of the penal law.

95.     By their conduct and actions and/or omissions in depriving Plaintiffs of their freedoms to be let alone, to move freely, to assemble, to associate, and to enjoy their property, in seizing them, in falsely arresting them, in assaulting and battering them, in maliciously

14

prosecuting them on the basis of false and/or untrustworthy information, in abusing process against them, in retaliating against them for the exercise of constitutionally protected rights, in inflicting emotional distress upon them, in violating their rights to due process and equal protection, and/or for failing to remedy the aforementioned violations after having witnessed them or having been informed of them by report or appeal, and/or by failing properly to train, supervise, or discipline employees of the Defendant CITY OF NEW YORK under their supervision, Defendants, acting under color of law and without lawful justification, intentionally, maliciously, and/or with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, deprived plaintiffs of the equal protection of the laws and/or of equal privileges and immunities under the laws, and thereby caused injury and damage in violation of Plaintiffs' constitutional rights as guaranteed under 42 U.S.C. § 1983 and the United States Constitution, including its First, Fourth, Fifth, and Fourteenth Amendments.

96.     By the conduct described above, Defendants, under color of state law, subjected Plaintiffs to the foregoing acts and omissions without due process of law and in violation of the First, Fourth Fifth, and Fourteenth Amendments to the United States Constitution, through 42 U.S.C. § 1983, thereby depriving Plaintiffs of their rights, privileges and immunities, including, without limitation, deprivation of the following constitutional rights:

    a.  Freedom to engage in protected speech, expression and association, without undue constraint or governmental retaliation;

    b.  Freedom from unreasonable seizures of their persons, including but not limited to the excessive use of force;

    c.  Freedom from arrest without probable cause;

    d.  Freedom from false imprisonment, meaning wrongful detention without good faith, reasonable suspicion or legal justification, and of which Plaintiffs were aware and did not consent;

    e.  Freedom from deprivation of liberty and property without due process of law;

f.   Freedom from malicious abuse of process;

g.   Freedom from malicious prosecution;

h.   The enjoyment of equal protection, privileges and immunities under the laws.

97.     As a result of the foregoing, Plaintiffs were deprived of their liberty, suffered

bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and

were otherwise damaged and injured.

## SECOND CAUSE OF ACTION

### SUPERVISORY LIABILITY FOR DEPRIVATION OF RIGHTS
### UNDER THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. § 1983

98.     Plaintiffs incorporate by reference the allegations set forth in all preceding

paragraphs as if fully set forth herein.

99.     By failing to remedy the wrongs committed by his or her subordinates, in failing

to properly train, screen, supervise, or discipline his or her subordinates, and by personally

participating in the constitutional injuries set forth above, Defendants ANGER, ZIELINSKI, and

COOKE caused damage and injury in violation of plaintiff's rights guaranteed under the United

States Constitution, including its First, Fourth, Fifth, and Fourteenth Amendments, through 42

U.S.C. §1983.

100.    As a result of the foregoing, Plaintiffs were deprived of their liberty, suffered

bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and

were otherwise damaged and injured.

## THIRD CAUSE OF ACTION

### FAILURE TO INTERVENE

101.    Plaintiffs incorporate by reference the allegations set forth in all preceding

paragraphs as if fully set forth herein.

102.    Members of the NYPD have an affirmative duty to assess the constitutionality of interactions between their fellow members of service and civilians and to intervene where they observe another member of the Police Department or other law enforcement agency employing unjustified and excessive force against a civilian or falsely arresting a civilian.

103.    Defendants were present for the above-described incident and witnessed other defendants unlawfully arrest the Plaintiffs.

104.    Defendants' use of force against Plaintiffs was obviously excessive and unjustified under the circumstances yet Defendants who were not involved in the obviously unlawful uses of force failed to take any action or make any effort to intervene, halt or protect the Plaintiffs from being subjected to excessive force by other Defendants.

105.    Plaintiffs' arrests and the initiation of criminal charges against them were clearly without probable cause or other legal justification, and was based on facts alleged by Defendants, which Defendants knew to be false, yet Defendants failed to take any action or make any effort to intervene, halt or protect Plaintiffs from being unlawfully and wrongfully arrested and prosecuted.

106.    As a result of Defendants' violations of Plaintiffs' constitutional rights by failing to intervene in other Defendants' clearly unconstitutional use of force and Plaintiffs' unconstitutional arrests and prosecutions, Plaintiffs were deprived of their liberty, suffered bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and were otherwise damaged and injured.

## FOURTH CAUSE OF ACTION

### FALSE ARREST

107.    Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

108.    As a result of Defendants' conduct as described above, Plaintiffs were subjected to illegal, improper, and false arrest by Defendants and taken into custody and caused to be falsely imprisoned, detained, and confined, without any probable cause, privilege, or consent.

109.    As a result of the foregoing, Plaintiffs were deprived of their liberty and property and First Amendment rights, suffered bodily injury, pain and suffering, psychological and emotional injury, humiliation, costs and expenses, and were otherwise damaged and injured.

## FIFTH CAUSE OF ACTION

### EXCESSIVE USE OF FORCE

110.    Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

111.    The level of force employed by Defendants was objectively unreasonable and in violation of Plaintiffs' constitutional rights.

112.    As a result of the foregoing, Plaintiffs were subjected to excessive force and sustained physical and emotional injuries.

## SIXTH CAUSE OF ACTION

### FIRST AMENDMENT

113.    Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

114.    In detaining, assaulting, and arresting Plaintiffs, in prosecuting Plaintiffs, and in implementing, enforcing, encouraging, sanctioning, and/or ratifying policies, practices, and/or customs punishing peaceful protest, Defendants violated Plaintiffs' rights to speak, assemble,

associate, and petition the government for redress of grievances peaceably in retaliation for their speaking out on a matter of public concern.

115.     As a result of the foregoing, Plaintiffs were deprived of their liberty and property and First Amendment rights, suffered bodily injury, pain and suffering, psychological and emotional injury, humiliation, costs and expenses, and were otherwise damaged and injured, and Defendants chilled and created the risk of chilling conduct protected by the First Amendment.

## SEVENTH CAUSE OF ACTION

### MALICIOUS ABUSE OF PROCESS

116.     Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

117.     Defendants issued legal process to place Plaintiffs under arrest.

118.     Defendants arrested Plaintiffs in order to obtain a collateral objective outside the legitimate ends of the legal process.

119.     Defendants acted with intent to do harm to Plaintiffs without excuse or justification.

120.     As a result of the foregoing, Plaintiffs were deprived of their liberty and property and First Amendment rights, suffered bodily injury, pain and suffering, psychological and emotional injury, humiliation, costs and expenses, and were otherwise damaged and injured.

## EIGHTH CAUSE OF ACTION

### MALICIOUS PROSECUTION

121.     Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

122.    Defendants misrepresented and falsified evidence before the District Attorney of New York County ("DANY").

123.    Defendants did not make a complete and full statement of facts to DANY.

124.    Defendants withheld exculpatory evidence from DANY.

125.    Defendants were directly and actively involved in the initiation of criminal proceedings against Plaintiffs.

126.    Defendants lacked probable cause to initiate criminal proceedings against Plaintiffs.

127.    Defendants acted with malice in initiating criminal proceedings against Plaintiffs.

128.    Defendants were directly and actively involved in the continuation of criminal proceedings against Plaintiffs.

129.    Defendants lacked probable cause to continue criminal proceedings against Plaintiffs.

130.    Defendants acted with malice in continuing criminal proceedings against Plaintiffs.

131.    Defendants misrepresented and falsified evidence throughout all phases of the criminal proceedings.

132.    Notwithstanding Defendants' misconduct, the criminal proceedings against Plaintiffs were favorably terminated on the merits.

133.    As a result of the foregoing, Plaintiffs were deprived of their liberty and property and First Amendment rights, suffered bodily injury, pain and suffering, psychological and emotional injury, humiliation, costs and expenses, and were otherwise damaged and injured.

## NINTH CAUSE OF ACTION

**DENIAL OF CONSTITUTIONAL RIGHTS TO FAIR TRIALS**

134.    Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

135.    Defendants created false information against Plaintiffs.

136.    Defendants forwarded false information to prosecutors in the Office of the District Attorney of New York County.

137.    Defendants misled the prosecutors and/or the Court by providing false information and/or testimony in initiating and throughout the criminal proceedings.

138.    Defendants failed to turn over exculpatory evidence and other materials to the prosecutor despite proper demands and/or requests for the same.

139.    Defendants therefore violated Plaintiffs' constitutional rights to fair trials under the Fifth and Fourteenth Amendments to the United States Constitution.

140.    As a result of the foregoing, Plaintiffs were deprived of their liberty and property and First Amendment rights, suffered bodily injury, pain and suffering, psychological and emotional injury, humiliation, costs and expenses, and were otherwise damaged and injured.

**TENTH CAUSE OF ACTION**

**SELECTIVE ENFORCEMENT**

141.    Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

142.    Defendants' use of the New York State disorderly conduct statute against Plaintiffs, but not others similarly situated, was invidiously discriminatory, malicious, purposeful, and/or arbitrary and capricious.

143.    Defendants' selective enforcement of the New York State disorderly conduct statute against Plaintiffs violated Plaintiffs' constitutional rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

144.    As a result of the foregoing, Plaintiffs were deprived of their liberty and property and First Amendment rights, suffered bodily injury, pain and suffering, psychological and emotional injury, humiliation, costs and expenses, and were otherwise damaged and injured.

## ELEVENTH CAUSE OF ACTION

### *MONELL* CLAIM AGAINST DEFENDANT CITY
### THROUGH 42 U.S.C. § 1983

145.    Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

146.    All of the acts and omissions by the named and unnamed individual police officer Defendants described above were carried out pursuant to policies and practices of the CITY which were in existence at the time of the conduct alleged herein and were engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of the Defendant CITY and its agency, the NYPD.

147.    Defendant CITY and the NYPD, by their policy-making agents, servants and employees, authorized, sanctioned and/or ratified the individual police Defendants' wrongful acts; and/or failed to prevent or stop those acts; and/or allowed or encouraged those acts to continue.

148.    The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers and officials pursuant to customs, policies, usages, practices, procedures and rules of the CITY and the NYPD, all under the supervision of ranking officers of the NYPD.

149.    The aforementioned customs, practices, procedures and rules of the CITY and the

NYPD includes, but is not limited to:

    a.    The policy and practice of failing to ensure that constitutionally meaningful

       and adequate dispersal orders and opportunities to disperse are given prior to

       effecting arrests in connection with First Amendment assemblies;

    b.    The policy and practice of treating perceived "groups" of people as a "unit"

       for "mass arrest" probable cause determination purposes without ensuring that

       lawfully authorized and constitutionally significant notice, and a meaningful

       opportunity to disperse, were given and disregarded prior to treating the

       perceived "group" as a "unit";

    c.    The policy and practice of applying New York Penal Law ("PL") § 240.20 (5)

       (Disorderly Conduct – Blocking Pedestrian or Vehicular Traffic) in

       circumstances where there is no lawful authority to arrest or detain perceived

       "groups" of people;

    d.    The policy and practice of applying New York Penal Law ("PL") § 240.20 (6)

       (Disorderly Conduct – Failure to Obey Lawful Dispersal Order) in

       circumstances where neither lawful dispersal orders, nor meaningful

       opportunities to disperse, were in fact given;

    e.    The use of arrests in lieu of issuing summonses for summons-eligible

       offenses;

    f.    The use of police resources to corral and trap perceived participants in First

       Amendment assemblies;

g.   The policy and practice of assigning "arrest teams" of officers who had not witnessed the conduct allegedly giving rise to the need for arrests to "process" the arrests of multiple arrestees, including by filling out NYPD paperwork and swearing out accusatory instruments containing false information;  and

h.   The policy and practice of inserting NYPD Legal Bureau and Criminal Justice Bureau agents into a special MAPP using a centralized Mass Arrest Processing Center ("MAPC") that manufactured false business and court records after the fact designed to give the impression that assigned arresting officers witnessed or knew things they had not, in fact, witnessed or known of.

150.   The aforementioned customs, practices, procedures and rules of the CITY and the NYPD were enacted based on Plaintiffs' First Amendment protected activity and not for any legitimate law enforcement purpose.

151.   As a result of the foregoing, Plaintiffs were deprived of their liberty and property and First Amendment rights, suffered bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and were otherwise damaged and injured.

## JURY DEMAND

152.   Plaintiffs demand a trial by jury in this action of all issues pursuant to Fed. R. Civ. P. 38(b).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray for the following relief:

A.   Compensatory damages against the Defendants jointly and severally; and

B.   Punitive damages against the individual Defendants; and

C.   Attorney's fees and costs pursuant to 42 USC §1988; and

D.   Such other and further relief as the Court deems just and proper.

DATED:        New York, New York
              November 5, 2014

                              Respectfully submitted,

                              Gideon Orion Oliver
                              *Attorney for Plaintiffs*
                              277 Broadway, Suite 1501
                              New York, NY  10007
                              t: 646-263-3495